UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------------X    **Case No. 25-2539**

MARCO MEIER,

                          Plaintiff,    <u>**FIRST AMENDED**</u>
<u>**COMPLAINT**</u>

    - against -

GOOGLE LLC., and MARTA MARTINEZ, *Individually,*    **PLAINTIFF DEMANDS**
**A TRIAL BY JURY**

                      Defendants.

-----------------------------------------------------------------------X

     MARCO MEIER ("Plaintiff"), by and through his attorneys, JOSEPH & NORINSBERG LLC, against GOOGLE LLC. ("Defendant Google"), and MARTA MARTINEZ, *Individually* ("Defendant Martinez"), (collectively "Defendants"), alleges upon knowledge as to himself and his own actions and upon information and belief as to all other matters as follows:

<u>**NATURE OF THE CASE**</u>

1.    Plaintiff complains pursuant to the discrimination and retaliation provisions of (i) **Title VII of the Civil Rights Act of 1964**, as amended, 42 U.S.C. § 2000e, *et. seq.* ("Title VII"); (ii) the **New York State Human Rights Law**, New York State Executive Law, § 296 *et seq.* ("NYSHRL"); (iii) the **New York City Human Rights Law,** New York City Administrative Code § 8-107(1), <u>et</u> <u>seq</u>. ("NYCHRL"), and any other claim(s) that can be inferred from the facts set forth herein and seeks damages to redress the injuries Plaintiff suffered as a result of being discriminated and retaliated against by Defendants on the **basis of Plaintiff's sex/gender (male).**

2.    "**The women on my team have better leadership skills and are better prepared**," "**Men are too aggressive and too competitive**." These were the appalling statements of discriminatory animus against male employees that were espoused by Defendant Marta

Martinez, the Managing Director of Sales for Defendant Google LLC, to Plaintiff while Plaintiff and all male team leaders in Defendant Martinez's department endured a relentless campaign of hostile and disparate treatment, severe harassment, and discrimination based upon gender. **Indeed, over the course of a four-year period, Plaintiff witnessed the nefarious and systematic elimination of each male team leader reporting to Defendant Martinez, all of whom were exclusively replaced with female team leaders. It is important to note that when Plaintiff first started working with Defendant Martinez's team, it was comprised of nine (9) employees, of which seven (7) were male. However, due to Defendant Martinez's direct and aggressive discrimination targeted on gender, by 2022, the team was switched to seven (7) females and only two (2) male team leaders remained including Plaintiff**. Moreover, Plaintiff and all male team leaders were continuously restricted from providing their insight during meetings, were issued lower performance reviews while female team leaders were provided with higher reviews without basis, were repeatedly denied large-scale influential projects while such projects were provided to lesser qualified female team leaders, and Plaintiff and all male team leaders were continuously denied promotions while female team leaders were rapidly promoted.

3. Due to the onslaught of discrimination and harassment, and the continuous systematic elimination of male team leaders to which Plaintiff was one of the last male employees remaining, Plaintiff submitted two detailed complaints of gender discrimination to Defendant Google. However, no investigation was conducted, and no corrective action was taken. Rather, Plaintiff was shockingly terminated by Defendant Google in retaliation just two months after his second complaint of discrimination was closed, and after twelve and a half years of outstanding performance, dedication, and service to Defendant Google LLC.

4.  Indeed, throughout his employment, Plaintiff was a stellar employee subject to high commendation and regard in which Plaintiff held various high-level positions during his tenure, including Global Business Leader, Global Agency Lead, Omnicom, Head of Industry, Media Platforms – OMG, and Head of Industry, Media Platforms – Big 6 Agencies. Moreover, Plaintiff consistently received outstanding performance evaluations in which Plaintiff was routinely rated as "exceeding expectations," and he regularly received 100% positive feedback from his reports. The accomplishments of Plaintiff were also without parallel which includes closing the largest programmatic guaranteed deal (PG deal) in Defendant Google's history with Apple.

5.  However, Plaintiff's work environment was permanently and irreparably changed when Plaintiff came under the supervision of Defendant Martinez. From the outset, Plaintiff and the other male team leaders were continuously restricted from expressing their opinions and contributing during meetings. Furthermore, all large-scale more significant work projects were only given to female team leaders by Defendant Martinez. The discriminatory bias exercised by Defendant Martinez in providing large projects only to female employees in turn ensured that female employees received "Higher than average" performance ratings while male employees including Plaintiff received low ratings.

6.  Moreover, Defendant Martinez demonstrated a strong discriminatory preference in promoting female team leaders. Particularly, all female team leads were promoted in less than two to three years. In stark contrast, Plaintiff was finally promoted from Level 6 to Level 7 after five and one-half years while Defendant Martinez refused to promote any other male team leaders. The repeated passing over of Plaintiff for a promotion defied explanation and it was not until there was substantial pressure by senior management that Plaintiff received a promotion.  Notably,

the gender bias and contempt for males was not limited to Defendant Martinez but further extended to Defendant Google as an organization. **Specifically, in or around November 2022, Defendant Google promoted fourteen (14) employees in the Americas to Director positions. However, thirteen (13) of the promotions were provided to female employees**.

7. The extreme nature of Defendant Martinez's discriminatory animus against male employees was most readily apparent by the blatant systematic termination of all male team leaders and replacement by Defendant Martinez with female team leads. Significantly, when Plaintiff began working on Defendant Martinez's team, the team was comprised of nine employees that consisted of seven male and two female team leaders. Nonetheless, by 2022, Defendant Martinez's direct reports consisted of seven female team leaders and two male team leaders which included Plaintiff.

8. Due to the overwhelming and relentless hostility, gender stereotyping, disparate treatment, harassment, and discrimination, Plaintiff submitted a detailed complaint to Defendant Google on November 22, 2022, in which Plaintiff stated:

> "Gender Discrimination. Since Marta has started at Google, she has let go of almost every single male direct report on her team and hired almost exclusively women in leadership. **Four years ago, Marta had 9 direct reports, 7 of them men and 2 women, today she has 9 direct reports and 7 are women and only 2 men**. Neither outlier is a good distribution of gender, but there is clear and obvious intent behind supporting mainly women in leadership. Beyond that, it takes women on her leadership team less than half the time to be eligible for promotion. (I have data and examples to back this up.) Ratings are not distributed equally because Marta does not evenly distribute the work equitably among men and women on her team. For events like Cannes, only women were sent. **For important initiatives across our org, women are nominated almost exclusively**. Men are constantly interrupted in meetings when they share an opinion."

9. At the time of Plaintiff's complaint, Plaintiff and one other male employee were the only two male team leaders remaining in Defendant Martinez's department. However, Defendant Google did not even interview the other male team leader despite Plaintiff's complaint

detailing the alarming nature of Defendant Martinez's discriminatory acts and systematic elimination of male employees. Thereafter, Plaintiff was met with severe hostility and retaliation by Defendant Martinez. This culminated with the retaliatory removal of Plaintiff from the department by Defendant Martinez and assignment to a new manager. Moreover, Defendant Martinez further retaliated by submitting false and negative performance reviews of Plaintiff to his new manager. In light of the false information Defendant Martinez entered into the reviews, Plaintiff and Defendant Martinez had a meeting in which she was unable to explain the basis for entering false information and then shockingly stated to Plaintiff, "**The women on my team have better leadership skills and are better prepared**."

10. Appalled by Defendant Martinez's blatant and outrageous discrimination, Plaintiff immediately filed another complaint of discrimination on August 30, 2023, in which Plaintiff advised Defendant Google:

> "During a performance conversation at the office in New York. Approximately one month ago we had another round of performance conversation with our managers and my former manager told me that I had neglected my job and that I did not deliver on my OKRs. I had proof afterwards that I actually overdelivered on my OKRs (on ALL of them). Then she said to me that "the women on my team have better leadership skills and are better prepared. Your performance was not good." **This came after a LONG list of generalizations for supporting women ONLY, always interrupting the men on the team and then also promoting women much faster than men on her team. She exclusively hired women on her team**."

11. Defendant Google claimed on November 13, 2023, that they had completed their internal investigation concerning Plaintiff's complaint. Not only was no action taken by Defendant Google against Defendant Martinez, but merely two months after the purported investigation was completed, Defendant Google proceeded to notify Plaintiff on January 17, 2024, that his employment would be terminated on April 17, 2024, under the guise of "Role elimination," as a final egregious act of retaliation.

12. Notably, on March 22, 2024, Ms. Eveillard from the internal E.R. team of Defendant Google, even admitted to Defendant Martinez's discriminatory conduct to which she stated to Plaintiff, "**I provided [Defendant Martinez] with feedback/coaching about the conduct**." However, no further action was taken beyond the purported feedback and Plaintiff's retaliatory termination nonetheless proceeded.

13. The falsity of Plaintiff's role elimination also became strongly apparent following his termination in which a female employee Julie McGill immediately took over his position and duties with the same OKR's, same clients, and same direct reports, to which it was clear that Plaintiff's role was never eliminated.

## JURISDICTION AND VENUE

14. Jurisdiction of this Court is proper under 42 U.S.C. §12101, et seq., and 28 U.S.C. §§ 1331 and 1343.

15. The Court has supplemental jurisdiction over Plaintiff's state and county claims pursuant to 28 U.S.C. § 1367.

16. Venue is proper in this district in that the events or omissions giving rise to the claims occurred within the Southern District of New York. 28 U.S.C. § 1391(b).

## PROCEDURAL PREREQUISITES

17. Plaintiff timely filed a complaint, upon which this Amended Complaint is based, with the United States Equal Employment Opportunity Commission ("EEOC").

18. Plaintiff received a Notice of Right to Sue from the EEOC on February 5, 2025, with respect to the instant charges of discrimination. A copy of the Notice is annexed to the original Complaint.

19. This action is being commenced within 90 days of receipt of the Notice of Right to Sue.

**PARTIES**

20. At all times material, Plaintiff was and is a male and a resident of the State of New York.

21. At all times material, Plaintiff was and is a "person" and an "employee" of Defendant Google and entitled to protection as defined by TITLE VII, NYSHRL, and NYCHRL.

22. Upon information and belief, at all times material, GOOGLE LLC was and is a subsidiary of ALPHABET INC., and a provider of search and advertising services on the internet.

23. At all times material, Defendant Google was and is headquartered at 1600 Amphitheatre Parkway, Mountain View, CA 94043.

24. At all times material, Plaintiff worked for Defendant Google at its New York office, located at and/or near the main office of 111 8th Avenue, New York, NY 10011.

25. At all times material, Defendant Martinez was employed by Defendant Google as the Managing Director of Sales, a supervisor role.

26. At all times material, Plaintiff worked for Defendants.

27. At all times material, Defendant Google employed over 1,000 employees.

28. At all times material, Defendant Google was and is an "employer" under TITLE VII, NYSHRL, and NYCHRL.

**MATERIAL FACTS**

29. On or about November 1, 2011, Plaintiff began working for Defendant Google as an Account Executive earning $220,000 annually, including bonuses.

30. Throughout Plaintiff's tenure with Defendant Google, Plaintiff worked under the supervision of Country Director Agency DACH Lars Lehne ("Mr. Lehne"), Global Client Lead Amy Yury ("Ms. Yury"), Director of US Agency Business Development, Monique Sanchez ("Ms. Sanchez"), Managing Director of Sales Marta Martinez ("Defendant Martinez"), and Head of

Emerging Products and Markets Stephen Yap ("Mr. Yap").

31. As an Account Executive, Plaintiff's duties and responsibilities included but were not limited to increasing advertising revenues by selling advertisement inventory on Google Search and YouTube, maintaining client relations, renewing advertisement contracts, and reaching out to potential buyers.

32. At all times material, Plaintiff was a stellar and dedicated employee with no write-ups or disciplinary actions throughout his employment.

33. Indeed, Plaintiff underwent annual end-of-year reviews and was consistently issued fantastic reviews which listed Plaintiff as "exceeding expectations" for most reviews throughout his tenure. Further, throughout Plaintiff's tenure with Defendant Google, Plaintiff always received near-perfect "Upward Manager Feedback" from his team and subordinates.

34. As such, given Plaintiff's truly fantastic performance, throughout Plaintiff's employment with Defendant Google, Plaintiff was promoted to Global Business Leader, Global Agency Lead, Omnicom, then to Head of Industry, Media Platforms – OMG, and finally to Sr. Head of Industry Media Platforms – Big 6 Agencies.

35. Further, Plaintiff received yearly merit-based salary increases, in addition to salary increases tied to his promotions. Throughout Plaintiff's 12.5-year tenure with Defendant Google, Plaintiff received over fifteen salary increases.

36. As such, by 2023 Plaintiff earned $540,000 annually, including bonuses, and additional benefits through Google Equity stocks.

37. Indeed, Plaintiff was by all accounts a spectacular and hardworking employee, who repeatedly demonstrated his dedication to Defendant Google and its goals. The accomplishments of Plaintiff were also without parallel including without limitation closing the largest

programmatic guaranteed deal (PG deal) in Defendant Google's history with Apple. Most recently, on or about March 12, 2024, Defendant Google invited Plaintiff to join the 2024 HOI Council to assist in "shaping the future of the HOI/Manager role across ALCS."

38. However, Plaintiff's work environment irreparably and dramatically changed in or about 2019, when Plaintiff began working under the supervision of Defendant Martinez.

39. Indeed, Defendant Martinez engaged in an unconscionable campaign of discrimination against Plaintiff, based on his sex/gender (male) as evidenced by Defendant Martinez treating Plaintiff with hostility and animosity, subjecting Plaintiff to disparate treatment, isolating Plaintiff, undermining Plaintiff's authority, and treating Plaintiff (and other male team members) as if they were less qualified than their similarly situated female coworkers.

40. For example, on or about December 18, 2021, Defendant Martinez emailed Christmas gifts to all team members. The gift was an annual membership to Step-Up, a company that supports only women in leadership.

41. At the time, Plaintiff thought it was a strange gift. However, in an effort to maintain an amicable work environment, Plaintiff did not make any comments about the gift.

42. Notably, when Plaintiff began working on Defendant Martinez's team, the team was comprised of nine employees, which consisted of seven male team leads and two female team leads.

43. However, shortly thereafter, Defendant Martinez began terminating almost all of the male team leaders on her team. Indeed, within two years, Defendant Martinez successfully terminated most of her male employees which included, Scott Sullivan ("Mr. Sullivan"), Gueric Doucet ("Mr. Doucet"), Ian Ball ("Mr. Ball"), Jim Jansen ("Mr. Jansen"), Jake Newman ("Mr. Newman"), Noah Fenn ("Mr. Fenn"), and Jeremy Woodlee ("Mr. Woodlee").

44. Defendant Martinez then replaced each male team leader with a female team leader.

45. Throughout Plaintiff's tenure working for Defendant Martinez, Defendant Martinez repeatedly and consistently subjected Plaintiff (and other male team members) to severely hostile treatment, spoke to Plaintiff with animosity, and repeatedly interrupted Plaintiff whenever Plaintiff spoke during team meetings.

46. In fact, Defendant Martinez's clear bias against men was quickly noted, and Plaintiff and the other male team members immediately understood Defendant Martinez had no interest in allowing them to speak up, voice their opinions, or contribute during meetings.

47. Indeed, Defendant Martinez directly expressed her contempt, animus, and disdain of males to Plaintiff on multiple occasions in which she stated, "**Men are too aggressive and too competitive**."

48. Furthermore, Defendant Martinez habitually assigned all larger and more significant projects to the female team leads that had more visibility internally amongst Google's leadership. Through this, the female employees reaped the benefits of leading all internal high-visibility projects, while the male employees were left with low-visibility, lower-value projects.

49. As a result of this inequitable work distribution, male team leaders were disadvantaged as they lacked ongoing and consistent large projects, which in turn resulted in limited opportunities to receive fair performance ratings.

50. Indeed, Defendant Martinez ensured that only her female team leads obtained "Higher than average" performance ratings while issuing lower ratings to the male team leads.

51. For context, Defendant Google has a curved performance rating, therefore only the top 25-35% of employees receive a "Higher than average" rating. Notably, Plaintiff had consistently obtained this "Higher than average" rating before working with Defendant Martinez. However, once Plaintiff began working with Defendant Martinez, Plaintiff's ratings immediately

dropped.

52.   Similarly, Defendant Martinez swiftly encouraged the promotion of all of her female team leaders twice as quickly and twice as often as their male counterparts. For example, in less than three years, all of the female team leads on Defendant Martinez's team were promoted such as Kate Hansen, ("Ms. Hansen"), Clare Dunne ("Ms. Dunne"), Sharen Philips ("Ms. Philips"), some after only a year of working for Defendant like Christina Mohebbi ("Ms. Mohebbi"), and some instantly upon their internal transfer like Nadia Carta ("Ms. Carta").

53.   However, in stark contrast, Plaintiff worked for Defendant Martinez and was finally promoted from Level 6 to Level 7 after over five and a half years on the same level.

54.   Indeed, despite significant support from several Directors and Vice Presidents working in Upper Management, such as Strategic Partner Development Manager Sam Temes ("Mr. Temes") and Google NY's Office Lead Torrence Boone ("Mr. Boone"), Defendant Martinez repeatedly passed Plaintiff over for promotions and instead issued promotions much sooner to less experienced female leaders.

55.   Mr. Boone even emailed Defendant Martinez a glowing review offering his "Strong endorsement for [Plaintiff's] promotion to L7" and noted Plaintiff had:

> Consistently differentiated himself among his peers throughout his tenure at Google. He redefined our relationship with Resolution Media, migrating a largely tactical point of departure to a more strategic and transformational partnership with the CEO and global leadership team. He used this foundational work and strong credibility to bridge the broader OMG C-Suite while broadening his impact on the Platforms front. In addition to his many other accomplishments, the Apple PG deal speaks for itself and serves as a major breakthrough for our global relationship. Beyond the work, I also want to emphasize [Plaintiff's] character and values, because those too are differentiated and relevant as he continues to grow in leadership responsibilities. I have always found [Plaintiff] to be thoughtful, humble, empathetic, and not afraid to voice important issues/insights when they are for the greater benefit of the team. He

11

> was tireless in advocating for mechanisms to drive greater career and professional mobility and pioneered the first job swap of its kind– a source of inspiration for many. During the difficult racial tensions last summer, [Plaintiff] joined sessions as an ally and offered compelling perspectives on how Germany addressed the difficult legacy of the Holocaust. He did all of these things without a hint of entitlement or expectation. **We need more leaders like [Plaintiff]**. I strongly endorse his promotion to L7.

56.    Nevertheless, Defendant Martinez ignored all recommendations and performance data, and repeatedly passed Plaintiff over for promotions without cause or explanation.

57.    In addition, while it took Defendant Martinez over five and a half years to finally promote Plaintiff, she refused to promote any other male team leader. In effect, Defendant Martinez took it upon herself to single-handedly double the timeline for expected and average promotions for male employees, while simultaneously substantially shortening the timeline for expected and average promotions for female employees.

58.    In fact, Defendant Martinez clearly preferred to promote female employees in lieu of Plaintiff's male direct reports.   In one instance, one of Plaintiff's direct reports told Plaintiff that Defendant Martinez was not going to promote him but, instead, was looking to promote a woman.

59.    Defendant Martinez's discriminatory conduct towards male employees was also readily apparent to another male team leader, who recognized that she favored the female team leaders and had a clear desire to hire them over their male counterparts.

60.    Indeed, this bias against male employees and sex/gender discrimination went far beyond just Defendant Martinez. Generally, throughout the organization, Defendant Google promoted women in leadership positions significantly more often than their male counterparts. **For example, in or about November 2022, Defendant Google promoted fourteen employees in the Americas to Director positions. Of those fourteen promotions, thirteen of the**

12

**promotions were given to female employees**.

61.    Significantly, by 2022, Plaintiff was one of only two male team leads remaining as direct reports to Defendant Martinez as Defendants terminated all other male reports including Scott Sullivan, Gueric Doucet, Ian Ball, Jim Jansen, Jake Newman, Noah Fenn, and Jeremy Woodlee, each of whom were exclusively replaced with lesser qualified female team leaders.

62.    In addition, one of Plaintiff's direct reports saw the writing on the wall and left his employment with Google because there were basically no male employees left on Defendant Martinez's team.

63.    Defendant Martinez's animus and hatred of male employees was also recognized by other employees in which a former Head of Industry stated the following:

> "I have witnessed over the span of several years, working with Marta Martinez as a colleague internally at Google and externally at Google, that she has created a work environment that was very favorable to her female team leads, while creating a hostile work environment towards her male direct reports. **Larger, more important projects were given to the female team leads. Marta Martinez also hired and promoted exclusively women into leadership positions**. During my time at Google alone, four male team leads were asked to leave Google, while all female team leads are still with Google today. Marta M also created a work environment that was hostile towards her male team leads. **She consistently interrupts her male colleagues in team meetings, does not value their opinion which directly translated into less favorable performance ratings**. "

64.    Finally, on or about November 21, 2022, tired and frustrated with the relentless discrimination, Plaintiff contacted Defendant Google's external third-party provider, "Ethics Point" and issued an anonymous discrimination complaint against Defendant Martinez. Specifically, Plaintiff complained:

> Gender Discrimination. Since Marta has started at Google, she has let go of almost every single male direct report on her team and hired almost exclusively women in leadership. Four years ago, Marta had 9 direct reports, 7 of them men and 2 women, today she has 9 direct reports and 7 are women and only 2 men. Neither outlier is a good distribution of gender, but there is clear and obvious intent behind

13

supporting mainly women in leadership. Beyond that, it takes women on her leadership team less than half the time to be eligible for promotion. (I have data and examples to back this up.) Ratings are not distributed equally because Marta does not evenly distribute the work equitably among men and women on her team. For events like Cannes, only women were sent. For important initiatives across our org, women are nominated almost exclusively. Men are constantly interrupted in meetings when they share an opinion. And to top it off - to remove ALL subtly from the subject, Marta gifted her team a gift that can only be used by women. Here is an email excerpt: 'For our holidays this year I would like to share with you one of the causes that matters to me. That is why I am gifting you a one-year membership to Step Up. Step Up believes all girls should have the opportunity to pursue their dreams of success. That is why this organization works with girls and gender-expansive teens who may be facing systemic barriers to unlock their potential by empowering them to become confident, career-focused, and ready to join the next generation of leaders. As many of you know, I serve on the Board of Step Up and work with them to help scale their mission.' A gift the two men on her team literally could not use. I have been holding back for a long time as I am also very supportive of women in leadership in general but there is a limit to a proactive push towards one gender, and quite frankly that is harshly impacting careers in a negative way.

65. On or about November 22, 2022, Ethics Point confirmed their receipt of Plaintiff's complaint.

66. Notably, although Plaintiff submitted this complaint anonymously and specifically noted he did not wish to disclose his identity, the internal investigation team confirmed that they told Defendant Martinez that one team lead on her team had filed a complaint. The internal investigation began when there were two team leads reporting to Defendant Martinez and the internal investigation concluded right around the time when a second male team lead (Mr. Ball) was laid off, exposing Plaintiff as only team lead that could have filed a gender discrimination complaint against Defendants.

67. Given Defendant Martinez's great disdain for Plaintiff, the context of the complaint, and Plaintiff's role **as the only male team lead** on Defendant Martinez's team at the time, Defendant Martinez easily understood Plaintiff had issued the complaint.

14

68.    Further, no meaningful investigation was conducted concerning Plaintiff's complaint. In fact, the only other male team leader remaining in Defendant Martinez's department stated the following:

> "**In 2022 Meier and myself were the ONLY male direct reports to Marta Martinez**. Meier made me aware of the gender discrimination claim he had filed internally and **at NO POINT did the Employee Relations team even reach out to me to ask about the situation**. I was part of other internal investigations for similar matters and often i was interviewed on those matters very thoroughly. It did strike me as odd that i was the only (other) male team lead and i was never even asked about the allegations that Meier made."

69.    In the months that followed, Defendant Martinez continued to discriminate and retaliate against Plaintiff by showing greater animosity towards him, treating Plaintiff with hostility, undermining Plaintiff's authority, and repeatedly favoring female employees.

70.    Indeed, despite Plaintiff's complaint of gender discrimination, and despite Defendant Google's claims that they "Do not tolerate retaliation," Defendant Google took no disciplinary actions against Defendant Martinez for her discriminatory and retaliatory actions.

71.    The severe discrimination and retaliation Plaintiff was subjected to after his discrimination complaint against Defendant Martinez culminated with Defendant Martinez shockingly removing Plaintiff from her department and quickly issuing false and negative reviews of Plaintiff to his new Manager, Mr. Yap. Notably, only two team leads were moved out of Defendant Martinez's team, and Plaintiff was one of them.

72.    Then, in further retaliation, during a transition meeting with Plaintiff, Mr. Yap, and Defendant Martinez, Defendant Martinez issued harsh and false criticism by claiming Plaintiff had not achieved his Objectives and Key Results ("OKRs") and had abandoned his team members during the performance period.

73.    Stunned and upset by the false and retaliatory comments, which were posed in an attempt to

create a paper trail for Plaintiff's termination, Plaintiff left the meeting with tears in his eyes and feeling unjustly attacked.

74.    Later that same day, Plaintiff responded by emailing Defendant Martinez proof that he had indeed over-achieved all OKRs and also linking his outstanding manager feedback rating from his team.

75.    In the days that followed, Plaintiff attended a follow-up meeting with Defendant Martinez. However, following the meeting, Defendant Martinez boldly told Plaintiff, "**The women on my team have better leadership skills and are better prepared**." Plaintiff was shocked to hear Defendant Martinez so boldly exclaim her belief that the women were better.

76.    On or about August 30, 2023, Plaintiff submitted another Ethics Point gender discrimination complaint against Defendant Martinez. Specifically, Plaintiff explained:

> During a performance conversation at the office in New York. Approximately one month ago we had another round of performance conversation with our managers and my former manager told me that I had neglected my job and that I did not deliver on my OKRs. I had proof afterwards that I actually overdelivered on my OKRs (on ALL of them). Then she said to me that "the women on my team have better leadership skills and are better prepared. Your performance was not good." This came after a LONG list of generalizations for supporting women ONLY, always interrupting the men on the team and then also promoting women much faster than men on her team. She exclusively hired women on her team."

77.    On or about September 5, 2023, Employee Relations Representative Audrey Eveillard ("Ms. Eveillard") emailed Plaintiff, introducing herself and Representative David Baum ("Mr. Baum"). Ms. Eveillard went on to explain:

> We were made aware of a concern you recently shared in relation to Marta Martinez. We will be looking into these concerns and wanted to set up a meeting for us to discuss. I will put some time on your calendar for this shortly. There is no need for you to prepare anything in advance…Please note that Google does not tolerate

> retaliation, and we keep such matters as confidential as possible, only disclosing information on a need to know basis. For additional suggestions and care ideas during this process.

78. On or about November 13, 2023, Defendant Google emailed Plaintiff, claiming it had completed its internal investigation into Plaintiff's complaint of discrimination and retaliation. As a result, Defendant Martinez was issued a recommendation to complete an internal training on communication regarding DEI. However, despite Defendant Martinez's gross misconduct, she once again faced no disciplinary consequences or repercussions.

79. Two months later, on or about January 17, 2024, Defendant Google emailed Plaintiff a ninety-day notice and abruptly terminated Plaintiff under the guise of "Role Elimination." Specifically, Defendant Google's email claimed:

> Due to changes in business needs, Google has decided to restructure operations at certain of its facilities, including at the facility (if any) at which you work. This restructuring is scheduled to start on January 17, 2024. Based on this decision, we have had to make some difficult decisions about ongoing employment of some Google employees and we regret to inform you that your position is being eliminated….

80. In doing so, Defendant Google offered Plaintiff a severance agreement contingent upon Plaintiff waiving any and all rights to sue Defendant Google. Plaintiff did not and will not sign the severance agreement.

81. However, as Plaintiff was terminated, he did not receive his equity refresh for the 2024 calendar year and, as such, lost $150,000 worth of stock. Further, due to the discriminatory conduct and retaliation, Plaintiff lost $246,778.50 in unvested equity. Additionally, Plaintiff lost health and life insurance benefits for himself and his family.

82. Notably, at the time of Plaintiff's termination, Defendant Martinez was still an influential leader in Defendant Google's organization and an integral part of the decision-making process

regarding layoffs.

83. Further, while Defendant Google claimed Plaintiff's termination was a result of "Role Elimination," of the three team leaders who serviced agency partners in Plaintiff's department, Plaintiff was the only team leader to be terminated. The other two (female) team leaders, Emily Smith ("Ms. Smith") and Jessica Quasim ("Ms. Quasim") maintained their roles, despite Ms. Smith's very negative feedback from her direct reports.

84. Additionally, to further illustrate the targeted retaliation against Plaintiff, of the two remaining Team Leaders, Ms. Smith managed agencies such as Havas, Publicis, Dentsu, and four Google GMP products: DV360, SA360, GA360, CM360; while Ms. Quasim managed the independent agencies.

85. However, Ms. Smith had truly negative feedback from her direct reports and was not knowledgeable about the products she was selling as she had never worked with CM360, SA360, or GA360 products and joined the department merely six months prior.  In stark contrast, Plaintiff had significant experience and proven performance excellence across all four products. Nevertheless, Plaintiff was the only Team Leader terminated.

86. Most notably, merely a month later, in or about February 2024, Defendant Google announced to Plaintiff's former team and direct reports that Julie McGill ("Ms. McGill") (female employee) would be taking over all of Plaintiff's responsibilities as the new team lead, with the same OKRs, same clients, and same direct reports. Additionally, Ms. McGill is not knowledgeable about the products she is now selling as she had never worked with DV360, CM360, SA360, or GA360 products.

87. As such, it is abundantly clear, that Plaintiff's role was not "Eliminated." To the contrary, Defendants made a calculated and strategic move to target and terminate Plaintiff. Indeed, the

pretextual nature of Plaintiff's termination and falsity of the elimination of his position was well known after his departure. Indeed, one of Plaintiff's direct reports stated the following:

> "While Google claimed Meier's termination was a result of "Role Elimination", of the three team leaders who serviced agency partners in our department, Meier was the only team leader to be terminated. The other two (female) team leaders, Emily Smith and Jessica Quasim maintained their roles. Emily Smith had truly terrible feedback from her direct reports and was not knowledgeable about the products she was selling as she had never worked with CM360, SA360, or GA360 products, as she had joined the department merely six months prior. In contrast, **Meier had significant experience, and proven performance excellence across all four products and OUTSTANDING manager feedback results. Nevertheless, Meier was the only Team Leader terminated**.
>
> Shortly after Meier's termination, Google announced to me and all of the other former direct reports from Marco Meier that **Julie McGill would be taking over all of his responsibilities as the new team lead**, with the same OKRs, same clients, and same direct reports. **It was very obvious that Meier's role was in fact NOT eliminated**. Additionally, Julie McGil is not knowledgeable about the products she is now selling as she had never before worked with DV360 CM360, SA360, or GA360 products. It is very clear that Meier's role was not "eliminated" but a calculated move to target him."

88.  Moreover, following the news of Plaintiff's termination, at least sixteen employees reached out to Plaintiff noting their sadness, sentiments, and admiration for Plaintiff, and noting how shocked they were to hear of the terrible news. Indeed, Mr. Yap even stated to Plaintiff at the time of his termination, "**I should have never listened to Marta Martinez and what she said about you**." Another employee stated the following concerning the change in management after Plaintiff's discriminatory and retaliatory termination:

> "**Emily Smith became my new manager after Meier and everyone on her team was miserable due to her lack of expertise in the subject matter, never having worked on three out of the four products that we were selling**. Emily Smith also had very low manager feedback ratings as a result. When I started to report to Emily Smith, there were 7 people on the team, only 2 of that original 7 are left. 3 of them left w/in 2 weeks of each other this past April (2 of them spoke directly w/ Steve Yap about Emily's poor management style). Andrew August and I left on the same day at the end of July. **You could virtually ask ANY of her former reports about her management style and they will all confirm how bad she is**"

19

89. As a further direct result, and within only 10 weeks of Plaintiff's termination, FOUR of his former direct reports have either resigned from Google (Erica Bogdan, Mike Valeri, Brian McGurn, and Andrew August), have taken mental leave (Andrew August) or have moved to a different department (Meaghan Hutchison). All of these employees had previously shared the same sentiment of sadness of Plaintiff's termination and admiration for Plaintiff. Several other employees continue to reach out to Plaintiff stating that they are unhappy with their new managers Ms. Smith and Ms. McGill.

90. On or about March 21, 2024, truly hurt by Defendant Google's actions, Plaintiff emailed Employee Relations Representative Ms. Eveillard, and asked, "What training was [Defendant Martinez] given? Did she attend the training?"

91. On or about March 22, 2024, Ms. Eveillard acknowledged Defendant Martinez's discriminatory acts and replied claiming, "**I provided [Defendant Martinez] with feedback/coaching about the conduct**. If there are any new issues or developments, please let me know or file a ticket." However, no further action was taken and Defendant Martinez was maintained in leadership to freely continue without restraint to discriminate against male employees.

92. Plaintiff's final date of employment with Defendant Google was April 17, 2024.

93. As described herein, Defendants discriminated against Plaintiff on the basis of his sex/gender (male) as evidenced by Defendants creating, maintaining, allowing, endorsing, and failing to correct a hostile and adverse work environment; by Supervisor Defendant Martinez isolating Plaintiff; treating Plaintiff with hostility and animosity; undermining Plaintiff's authority; terminating every male team lead and replacing them exclusively with female team leads; interrupting Plaintiff during team meetings; denying Plaintiff career advancing opportunities;

issuing Plaintiff lowered performance review scores; denying Plaintiff large-scale and high-visibility projects; purposefully denying Plaintiff promotions without cause or explanation; taking double the amount of time to promote Plaintiff, while promoting female employees within half the amount of time without cause or justification; subjecting Plaintiff to disparate treatment as compared to Plaintiff's similarly situated female employees; treating Plaintiff (and other male team members) as if they were less qualified than their similarly situated female coworkers; removing Plaintiff from Defendant Martinez's department and quickly issuing false and negative reviews of Plaintiff to his new Manager; issuing purposefully false criticism such as claiming Plaintiff had not achieved his Objectives and Key Results ("OKRs") and had abandoned his team members during the transitional performance period, in an effort to create a paper trail for termination; telling Plaintiff rude and hostile comments such as, "The women on my team have better leadership skills and are better prepared" and "Men are too aggressive and too competitive;" lobbying for Plaintiff's unjust termination; by Defendant Google failing to meaningfully and in good faith investigate Plaintiff's complaints of harassment and discrimination; by Defendant Google failing to correct or address the discriminatory and retaliatory behavior; and by Defendants terminating Plaintiff without cause or justification under the pretext of "Role Elimination" while then hiring a female employee to replace Plaintiff and take over his exact same role and title.

94. Plaintiff engaged in protected activities by objecting to and reporting Defendant Martinez's discriminatory and retaliatory behavior.

95. As described herein, immediately after Plaintiff engaged in protected activities, Defendants retaliated against Plaintiff as evidenced by Defendants creating, maintaining, allowing, endorsing, and failing to correct a hostile and adverse work environment; by Supervisor

Defendant Martinez isolating Plaintiff; treating Plaintiff with hostility and animosity; undermining Plaintiff's authority; interrupting Plaintiff during team meetings; denying Plaintiff career advancing opportunities; issuing Plaintiff lowered performance review scores; denying Plaintiff large-scale and high-visibility projects; purposefully denying Plaintiff promotions without cause or explanation; taking double the amount of time to promote Plaintiff, while promoting female employees within half the amount of time without cause or justification; subjecting Plaintiff to disparate treatment as compared to Plaintiff's similarly situated female employees; treating Plaintiff (and other male team members) as if they were less qualified than their similarly situated female coworkers; removing Plaintiff from Defendant Martinez's department and quickly issuing false and negative reviews of Plaintiff to his new Manager; issuing purposefully false criticism such as claiming Plaintiff had not achieved his Objectives and Key Results ("OKRs") and had abandoned his team members during the performance period, in an effort to create a paper trail for termination; telling Plaintiff rude and hostile comments such as, "The women on my team have better leadership skills and are better prepared" and "Men are too aggressive and too competitive;" lobbying for Plaintiff's unjust termination; by Defendant Google failing to meaningfully and in good faith investigate Plaintiff's complaints of harassment and discrimination; by Defendant Google failing to correct or address the discriminatory and retaliatory behavior; and by Defendants terminating Plaintiff without cause or justification under the pretext of "Role Elimination" while then hiring a female employee to replace Plaintiff and take over his exact same role and title.

96.    As a result of Defendants' actions, Plaintiff feels extremely humiliated, degraded, victimized, embarrassed, traumatized, and emotionally distressed.

97. As a result of Defendant's actions, Plaintiff has suffered profound feelings of depression, anxiety, loss of self-esteem, demoralization, loss of confidence, emotional heaviness, numbness, feelings of low self-worth, feelings of hopelessness, and reduced interest in socializing.

98. Further, as a result of Defendants' actions, Plaintiff has suffered physical manifestations of stress, anxiety, distress, and depression, such as insomnia, difficulty sleeping, disrupted sleep patterns, restlessness, loss of energy, a negative change in appetite, unwanted weight loss, headaches, fatigue, and significant problems with focus and concentration.

99. Further, as a result of Defendants' actions, Plaintiff has suffered feelings of burn-out, a significant decrease in his ability to volunteer comments and opinions, and a substantial decrease in his self-esteem.

100. As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer the loss of income, benefits, and other compensation that such employment entails. Plaintiff has also suffered future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses. Plaintiff further experienced severe emotional and physical distress.

**FIRST CAUSE OF ACTION**
**FOR SEX DISCRIMINATION UNDER TITLE VII**

101. Plaintiff repeats and realleges each and every allegation in paragraphs one through one-hundred.

102. 42 U.S.C. § 2000e-2(a)(1), states in part:

> It shall be an unlawful employment practice for an employer to fail
>
> or refuse to hire or to discharge any individual, or otherwise to
>
> discriminate against any individual with respect to their

compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.

103. As described herein, Defendants engaged in unlawful employment practices prohibited by Title VII, by discriminating against Plaintiff on the basis of his sex/gender by creating, fostering, condoning, accepting, ratifying, and/or negligently failing to prevent or remedy a hostile work environment that included, among other things, discriminatory and disparate treatment of Plaintiff.

104. As described herein, Defendants discriminated against Plaintiff on the basis of his sex/gender (male) as evidenced by Defendants creating, maintaining, allowing, endorsing, and failing to correct a hostile and adverse work environment; by Supervisor Defendant Martinez isolating Plaintiff; treating Plaintiff with hostility and animosity; undermining Plaintiff's authority; terminating every male team lead and replacing them exclusively with female team leads; interrupting Plaintiff during team meetings; denying Plaintiff career advancing opportunities; issuing Plaintiff lowered performance review scores; denying Plaintiff large-scale and high-visibility projects; purposefully denying Plaintiff promotions without cause or explanation; taking double the amount of time to promote Plaintiff, while promoting female employees within half the amount of time without cause or justification; subjecting Plaintiff to disparate treatment as compared to Plaintiff's similarly situated female employees; treating Plaintiff (and other male team members) as if they were less qualified than their similarly situated female coworkers; removing Plaintiff from Defendant Martinez's department and quickly issuing false and negative reviews of Plaintiff to his new Manager; issuing purposefully false criticism such as claiming Plaintiff had not achieved his Objectives and Key Results ("OKRs") and had

24

abandoned his team members during the performance period, in an effort to create a paper trail for termination; telling Plaintiff rude and hostile comments such as, "The women on my team have better leadership skills and are better prepared" and "Men are too aggressive and too competitive;" lobbying for Plaintiff's unjust termination; by Defendant Google failing to meaningfully and in good faith investigate Plaintiff's complaints of harassment and discrimination; by Defendant Google failing to correct or address the discriminatory and retaliatory behavior; and by Defendants terminating Plaintiff without cause or justification under the pretext of "Role Elimination" while then hiring a female employee to replace Plaintiff and take over his exact same role and title.

105. As a result of Defendants' unlawful discriminatory conduct in violation of Title VII, Plaintiff has suffered and continues to suffer, economic loss, for which he is entitled to an award of monetary damages and other relief.

106. As a result of the unlawful discriminatory conduct of Defendants in violation of Title VII, Plaintiff has suffered and continues to suffer, severe mental anguish and emotional distress, including, but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which Plaintiff is entitled to an award of monetary damages and other relief.

107. The unlawful discriminatory actions of Defendants constitute malicious, willful, and wanton violations of Title VII, for which Plaintiff is entitled to the maximum allowable damages under this statute and an award of punitive damages.

## SECOND CAUSE OF ACTION
## FOR RETALIATION UNDER TITLE VII

108. Plaintiff repeats and realleges each and every allegation in paragraphs one through one-hundred and seven.

25

109.   42 U.S.C. § 2000e-3(a) provides that it shall be unlawful employment practice for an employer:

> [T]o . . . discriminate against any of his employees . . . because he
>
> has opposed any practice made an unlawful employment practice by
>
> this subchapter, or because he has made a charge, testified, assisted,
>
> or participated in any manner in an investigation, proceeding, or
>
> hearing under this subchapter.

Plaintiff engaged in protected activities by objecting to and reporting Defendant Martinez's discriminatory and retaliatory behavior.

110.   As described herein, immediately after Plaintiff engaged in protected activities, Defendants retaliated against Plaintiff as evidenced by Defendants creating, maintaining, allowing, endorsing, and failing to correct a hostile and adverse work environment; by Supervisor Defendant Martinez isolating Plaintiff; treating Plaintiff with hostility and animosity; undermining Plaintiff's authority; interrupting Plaintiff during team meetings; denying Plaintiff career advancing opportunities; issuing Plaintiff lowered performance review scores; denying Plaintiff large-scale and high-visibility projects; purposefully denying Plaintiff promotions without cause or explanation; taking double the amount of time to promote Plaintiff, while promoting female employees within half the amount of time without cause or justification; subjecting Plaintiff to disparate treatment as compared to Plaintiff's similarly situated female employees; treating Plaintiff (and other male team members) as if they were less qualified than their similarly situated female coworkers; removing Plaintiff from Defendant Martinez's department and quickly issuing false and negative reviews of Plaintiff to his new Manager; issuing purposefully false criticism such as claiming Plaintiff had not achieved his Objectives and Key Results ("OKRs") and had abandoned his team members

26

during the performance period, in an effort to create a paper trail for termination; telling Plaintiff rude and hostile comments such as, "The women on my team have better leadership skills and are better prepared" and "Men are too aggressive and too competitive;" lobbying for Plaintiff's unjust termination; by Defendant Google failing to meaningfully and in good faith investigate Plaintiff's complaints of harassment and discrimination; by Defendant Google failing to correct or address the discriminatory and retaliatory behavior; and by Defendants terminating Plaintiff without cause or justification under the pretext of "Role Elimination" while then hiring a female employee to replace Plaintiff and take over his exact same role and title.

111. Defendants would not have retaliated against Plaintiff but for Plaintiff's complaints of discriminatory treatment.

112. Such retaliatory treatment would dissuade any reasonable employee from making or supporting a similar complaint of discrimination.

113. As a result of Defendants unlawful conduct in violation of Title VII, Plaintiff has suffered, and continues to suffer, economic loss, for which Plaintiff is entitled to an award of monetary damages and other relief.

114. As a result of the unlawful conduct of Defendants in violation of Title VII, Plaintiff has suffered and continues to suffer, severe mental anguish and emotional distress, including, but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which Plaintiff is entitled to an award of monetary damages and other relief.

115. The unlawful discriminatory actions of Defendants constitute malicious, willful, and wanton violations of Title VII, for which Plaintiff is entitled to the maximum allowable damages under

27

this statute and an award of punitive damages.

### THIRD CAUSE OF ACTION
### FOR SEX DISCRIMINATION UNDER THE NYSHRL

116. Plaintiff repeats and realleges each and every allegation in paragraphs one through one-hundred and fifteen.

117. New York State Executive Law §296(1)(a) provides that:

> It shall be an unlawful discriminatory practice: For an employer or licensing agency, because of an individual's age, race, creed, color, national origin, citizenship or immigration status, sexual orientation, gender identity or expression, military status, sex, disability, predisposing genetic characteristics, familial status, marital status, or status as a victim of domestic violence, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment.

118. As described herein, Defendants engaged in unlawful employment practices prohibited by NYSHRL, by discriminating against Plaintiff on the basis of his sex/gender by creating, fostering, condoning, accepting, ratifying, and/or negligently failing to prevent or remedy a hostile work environment that included, among other things, discriminatory and disparate treatment of Plaintiff.

119. As described herein, Defendants discriminated against Plaintiff on the basis of his sex/gender (male) as evidenced by Defendants creating, maintaining, allowing, endorsing, and failing to correct a hostile and adverse work environment; by Supervisor Defendant Martinez isolating Plaintiff; treating Plaintiff with hostility and animosity; undermining Plaintiff's authority; terminating every male team lead and replacing them exclusively with female team leads; interrupting Plaintiff during team meetings; denying Plaintiff career advancing opportunities; issuing Plaintiff lowered performance review scores; denying Plaintiff large-scale and high-visibility projects; purposefully denying Plaintiff promotions without cause or explanation;

28

taking double the amount of time to promote Plaintiff, while promoting female employees within half the amount of time without cause or justification; subjecting Plaintiff to disparate treatment as compared to Plaintiff's similarly situated female employees; treating Plaintiff (and other male team members) as if they were less qualified than their similarly situated female coworkers; removing Plaintiff from Defendant Martinez's department and quickly issuing false and negative reviews of Plaintiff to his new Manager; issuing purposefully false criticism such as claiming Plaintiff had not achieved his Objectives and Key Results ("OKRs") and had abandoned his team members during the performance period, in an effort to create a paper trail for termination; telling Plaintiff rude and hostile comments such as, "The women on my team have better leadership skills and are better prepared" and "Men are too aggressive and too competitive;" lobbying for Plaintiff's unjust termination; by Defendant Google failing to meaningfully and in good faith investigate Plaintiff's complaints of harassment and discrimination; by Defendant Google failing to correct or address the discriminatory and retaliatory behavior; and by Defendants terminating Plaintiff without cause or justification under the pretext of "Role Elimination" while then hiring a female employee to replace Plaintiff and take over his exact same role and title.

120.    As a result of Defendants' unlawful discriminatory conduct in violation of the NYSHRL, Plaintiff has suffered and continues to suffer, economic loss, for which he is entitled to an award of monetary damages and other relief.

121.    As a result of the unlawful discriminatory conduct of Defendants in violation of NYSHRL, Plaintiff has suffered and continues to suffer, severe mental anguish and emotional distress, including, but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which Plaintiff is

entitled to an award of monetary damages and other relief.

122. The unlawful discriminatory actions of Defendants constitute malicious, willful, and wanton violations of NYSHRL, for which Plaintiff is entitled to the maximum allowable damages under this statute and an award of punitive damages.

**FOURTH CAUSE OF ACTION**
**FOR RETALIATION UNDER THE NYSHRL**

123. Plaintiff repeats and realleges each and every allegation in paragraphs one through one-hundred and twenty-two.

124. Executive Law § 296(7) provides that:

> "[i]t shall be an unlawful discriminatory practice for any person engaged in any activity to which this section applies to retaliate or discriminate against any person because he or she has opposed any practices forbidden under this article or because he or she has filed a complaint, testified, or assisted in any proceeding under this article."

125. Plaintiff engaged in protected activities by objecting to and reporting Defendant Martinez's discriminatory and retaliatory behavior.

126. As described herein, immediately after Plaintiff engaged in protected activities, Defendants retaliated against Plaintiff as evidenced by Defendants creating, maintaining, allowing, endorsing, and failing to correct a hostile and adverse work environment; by Supervisor Defendant Martinez isolating Plaintiff; treating Plaintiff with hostility and animosity; undermining Plaintiff's authority; interrupting Plaintiff during team meetings; denying Plaintiff career advancing opportunities; issuing Plaintiff lowered performance review scores; denying Plaintiff large-scale and high-visibility projects; purposefully denying Plaintiff promotions without cause or explanation; taking double the amount of time to promote Plaintiff, while promoting female employees within half the amount of time without cause or

justification; subjecting Plaintiff to disparate treatment as compared to Plaintiff's similarly situated female employees; treating Plaintiff (and other male team members) as if they were less qualified than their similarly situated female coworkers; removing Plaintiff from Defendant Martinez's department and quickly issuing false and negative reviews of Plaintiff to his new Manager; issuing purposefully false criticism such as claiming Plaintiff had not achieved his Objectives and Key Results ("OKRs") and had abandoned his team members during the performance period, in an effort to create a paper trail for termination; telling Plaintiff rude and hostile comments such as, "The women on my team have better leadership skills and are better prepared" and "Men are too aggressive and too competitive;" lobbying for Plaintiff's unjust termination; by Defendant Google failing to meaningfully and in good faith investigate Plaintiff's complaints of harassment and discrimination; by Defendant Google failing to correct or address the discriminatory and retaliatory behavior; and by Defendants terminating Plaintiff without cause or justification under the pretext of "Role Elimination" while then hiring a female employee to replace Plaintiff and take over his exact same role and title.

127. Defendants would not have retaliated against Plaintiff but for Plaintiff's complaints of discriminatory treatment.

128. Such retaliatory treatment would dissuade any reasonable employee from making or supporting a similar complaint of discrimination.

129. As a result of Defendants' unlawful conduct in violation of the NYSHRL, Plaintiff has suffered and continues to suffer, economic loss, for which Plaintiff is entitled to an award of monetary damages and other relief.

130. As a result of the unlawful conduct of Defendants in violation of NYSHRL, Plaintiff has

suffered and continues to suffer, severe mental anguish and emotional distress, including, but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which Plaintiff is entitled to an award of monetary damages and other relief.

131. The unlawful discriminatory actions of Defendants constitute malicious, willful, and wanton violations of NYSHRL, for which Plaintiff is entitled to the maximum allowable damages under this statute and an award of punitive damages.

## FIFTH CAUSE OF ACTION
## FOR SEX DISCRIMINATION UNDER THE NYCHRL

132. Plaintiff repeats and realleges each and every allegation in paragraphs one through one-hundred and thirty-one.

133. New York City Administrative Code §8-107(1)(a) provides that it shall be an unlawful discriminatory practice:

> For an employer or an employee or agent thereof, because of the actual or perceived age, race, creed, color, national origin, gender, disability, marital status, partnership status, caregiver status, sexual and reproductive health decisions, sexual orientation, uniformed service, height, weight, or immigration or citizenship status of any person, to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions, or privileges of employment.

134. As described herein, Defendants engaged in unlawful employment practices prohibited by NYCHRL, by discriminating against Plaintiff on the basis of Plaintiff's sex/gender by creating, fostering, condoning, accepting, ratifying, and/or negligently failing to prevent or remedy a hostile work environment that included, among other things, discriminatory and disparate treatment of Plaintiff.

32

135. As described herein, Defendants discriminated against Plaintiff on the basis of his sex/gender (male) as evidenced by Defendants creating, maintaining, allowing, endorsing, and failing to correct a hostile and adverse work environment; by Supervisor Defendant Martinez isolating Plaintiff; treating Plaintiff with hostility and animosity; undermining Plaintiff's authority; terminating every male team lead and replacing them exclusively with female team leads; interrupting Plaintiff during team meetings; denying Plaintiff career advancing opportunities; issuing Plaintiff lowered performance review scores; denying Plaintiff large-scale and high-visibility projects; purposefully denying Plaintiff promotions without cause or explanation; taking double the amount of time to promote Plaintiff, while promoting female employees within half the amount of time without cause or justification; subjecting Plaintiff to disparate treatment as compared to Plaintiff's similarly situated female employees; treating Plaintiff (and other male team members) as if they were less qualified than their similarly situated female coworkers; removing Plaintiff from Defendant Martinez's department and quickly issuing false and negative reviews of Plaintiff to his new Manager; issuing purposefully false criticism such as claiming Plaintiff had not achieved his Objectives and Key Results ("OKRs") and had abandoned his team members during the performance period, in an effort to create a paper trail for termination; telling Plaintiff rude and hostile comments such as, "The women on my team have better leadership skills and are better prepared" and "Men are too aggressive and too competitive;" lobbying for Plaintiff's unjust termination; by Defendant Google failing to meaningfully and in good faith investigate Plaintiff's complaints of harassment and discrimination; by Defendant Google failing to correct or address the discriminatory and retaliatory behavior; and by Defendants terminating Plaintiff without cause or justification under the pretext of "Role Elimination" while then hiring a female employee to replace

Plaintiff and take over his exact same role and title.

136.    As a result of Defendants' unlawful discriminatory conduct in violation of the NYCHRL, Plaintiff has suffered and continues to suffer, economic loss, for which he is entitled to an award of monetary damages and other relief.

137.    As a result of the unlawful discriminatory conduct of Defendants in violation of NYCHRL, Plaintiff has suffered and continues to suffer, severe mental anguish and emotional distress, including, but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which Plaintiff is entitled to an award of monetary damages and other relief.

138.    The unlawful discriminatory actions of Defendants constitute malicious, willful, and wanton violations of NYCHRL, for which Plaintiff is entitled to the maximum allowable damages under this statute and an award of punitive damages.

## SIXTH CAUSE OF ACTION
## FOR RETALIATION UNDER THE NYCHRL

139.    Plaintiff repeats and realleges each and every allegation in paragraphs one through one-hundred and thirty-eight.

140.    The New York City Administrative Code §8-107(7) provides, in part, that it shall be an unlawful discriminatory practice for any person engaged in any activity to which this chapter applies to retaliate or discriminate in any manner against any person because such person has (i) opposed any practice forbidden under this chapter or (ii) filed a complaint, testified or assisted in any proceeding under this chapter.

141.    Plaintiff engaged in protected activities by objecting to and reporting Defendant Martinez's discriminatory and retaliatory behavior.

142.    As described herein, immediately after Plaintiff engaged in protected activities, Defendants

retaliated against Plaintiff as evidenced by Defendants creating, maintaining, allowing, endorsing, and failing to correct a hostile and adverse work environment; by Supervisor Defendant Martinez isolating Plaintiff; treating Plaintiff with hostility and animosity; undermining Plaintiff's authority; interrupting Plaintiff during team meetings; denying Plaintiff career advancing opportunities; issuing Plaintiff lowered performance review scores; denying Plaintiff large-scale and high-visibility projects; purposefully denying Plaintiff promotions without cause or explanation; taking double the amount of time to promote Plaintiff, while promoting female employees within half the amount of time without cause or justification; subjecting Plaintiff to disparate treatment as compared to Plaintiff's similarly situated female employees; treating Plaintiff (and other male team members) as if they were less qualified than their similarly situated female coworkers; removing Plaintiff from Defendant Martinez's department and quickly issuing false and negative reviews of Plaintiff to his new Manager; issuing purposefully false criticism such as claiming Plaintiff had not achieved his Objectives and Key Results ("OKRs") and had abandoned his team members during the performance period, in an effort to create a paper trail for termination; telling Plaintiff rude and hostile comments such as, "The women on my team have better leadership skills and are better prepared" and "Men are too aggressive and too competitive;" lobbying for Plaintiff's unjust termination; by Defendant Google failing to meaningfully and in good faith investigate Plaintiff's complaints of harassment and discrimination; by Defendant Google failing to correct or address the discriminatory and retaliatory behavior; and by Defendants terminating Plaintiff without cause or justification under the pretext of "Role Elimination" while then hiring a female employee to replace Plaintiff and take over his exact same role and title.

143. Defendants would not have retaliated against Plaintiff but for Plaintiff's complaints of discriminatory treatment.

144. Such retaliatory treatment would dissuade any reasonable employee from making or supporting a similar complaint of discrimination.

145. As a result of Defendants' unlawful conduct in violation of the NYCHRL, Plaintiff has suffered and continues to suffer, economic loss, for which Plaintiff is entitled to an award of monetary damages and other relief.

146. As a result of the unlawful conduct of Defendants in violation of NYCHRL, Plaintiff has suffered and continues to suffer, severe mental anguish and emotional distress, including, but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which Plaintiff is entitled to an award of monetary damages and other relief.

147. The unlawful discriminatory actions of Defendants constitute malicious, willful, and wanton violations of NYCHRL, for which Plaintiff is entitled to the maximum allowable damages under this statute and an award of punitive damages.

## JURY DEMAND

148. Plaintiff requests a jury trial on all issues to be tried.

**WHEREFORE**, Plaintiff respectfully requests a judgment against the Defendants:

A. Declaring that Defendants engaged in unlawful employment practices prohibited by Title VII, NYSHRL, and NYCHRL in that Defendants discriminated against and retaliated against Plaintiff on the basis of his sex/gender (male) and created and maintained a hostile work environment;

B. Declaring that Plaintiff has been damaged in an amount in excess of the jurisdiction of the

Court;

C.    Awarding damages to Plaintiff for all lost wages and benefits resulting from Defendants' unlawful discrimination and to otherwise make him whole for any losses suffered as a result of such unlawful employment practices;

D.    Awarding Plaintiff compensatory damages for mental, emotional injury, distress, pain and suffering, and injury to his reputation in an amount to be proven;

E.    Awarding Plaintiff punitive damages;

F.    Awarding Plaintiff attorneys' fees, costs, disbursements, and expenses incurred in the prosecution of the action; and

G.    Awarding Plaintiff such other and further relief as the Court may deem equitable, just, and proper to remedy Defendants' unlawful employment practices.

Dated: New York, New York
        December 11, 2025

**JOSEPH & NORINSBERG LLC**

By: /s/ *Jitesh Dudani*
Jitesh Dudani, Esq.
William K. Oates, Esq.
One World Trade Center, Floor 85
New York, NY 10007
Direct: (212) 220-6787
Tel: (212) 227-5700
Fax: (212) 656-1889
Jitesh@employeejustice.com