UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------

MARCO MEIER,

                                          Plaintiff,

          -v-

GOOGLE LLC *et al.*,

                                          Defendants.

25 Civ. 2539 (PAE)

ORDER

------------------------------------------------------------

PAUL A. ENGELMAYER, United States District Judge:

This order resolves a discovery dispute. Plaintiff Marco Meier seeks to take the deposition of nonparty Sean Downey, who serves at defendant Google LLC ("Google") as President for Americas & Global Partners. Dkt. 43. On January 23, 2026, defendants moved for a protective order to block the deposition. *Id.* at 1. On January 30, 2026, Meier filed an opposition. Dkt. 49 at 1–2.

For the reasons that follow, the Court grants defendants' motion for a protective order to block Downey's deposition.

**I.    Background**

The Court assumes familiarity with the background of this case. In brief, Meier, a former Google employee, sues Google and Marta Martinez (collectively "defendants") under, *inter alia*, Title VII of the Civil Rights Act of 1964, the New York State Human Rights Law ("NYSHRL"), and the New York City Human Rights Law ("NYCHRL"). Dkt. 39 ("AC").[1] Meier contends that defendants subjected him to unlawful gender-based discrimination and retaliation by

---

[1] On December 11, 2025, Meier filed an amended complaint, the operative complaint today. Dkt. 39.

1

assigning him inferior work, administering unfair performance reviews, denying him promotions, and, ultimately, terminating his employment at Google. *Id.* ¶¶ 1–11. Between 2019 and 2022, Martinez served as Meier's direct supervisor. *Id.* ¶¶ 38, 71–72. Meier asserts that Downey oversaw Martinez's department "during the period of alleged discrimination and retaliation, from 2019 to 2022." Dkt. 49 at 2. Meier alleges he was also supervised by four other people, including, between 2022 and 2024, Steven Yap. AC ¶¶ 30, 71–72. On April 17, 2024, Meier was terminated by Google. *Id.* ¶ 11.

On November 4, 2025, the Court held an initial pre-trial conference, Dkt. 25, and, on November 10, 2025, entered a case management plan, under which fact discovery is scheduled to end on March 4, 2026, Dkt. 30. Meier anticipated taking up to 10 depositions during fact discovery. *Id.* at 1. As of January 23, 2026, Meier had noticed seven depositions, including Downey's. Dkt. 43 at 1 n.1. Defendants now seek a protective order to prevent Meier from taking Downey's deposition. *Id.* at 2.

## II.   Discussion

Under Rule 26, a party may seek discovery into "any nonprivileged mater that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). A court must limit discovery where the information sought is "unreasonably cumulative or duplicative" or when the "burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(2)(C)(i).

A party may preclude its adversary from deposing a party or person by obtaining a protective order under Rule 26(c). *See DDK Hotels, LLC v. Williams-Sonoma, Inc.*, No. 19 Civ.-226, 2020 WL 13450954, at *2 (E.D.N.Y. Feb. 25, 2020). Under that rule, a court may, "for good cause, issue an order to protect a party or person from annoyance, embarrassment,

2

oppression, or undue burden or expense, including . . . forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters." Fed. R. Civ. P. 26(c)(1). "The party seeking the protective order carries the burden to show that good cause exists for issuance of the order." *Capri Sun GmbH v. Am. Beverage Corp.*, 414 F. Supp. 3d 414, 424 (S.D.N.Y.-2019) (citation omitted). Ultimately, "the grant or denial of a protective order lies within the sound discretion of the district court." *Dove v. Atl. Cap. Corp.*, 963 F.2d 15, 20 (2d Cir. 1992). In this context, involving a deposition noticed of a corporate executive, a party opposing a protective order to preclude the deposition must show that the executive has "personal knowledge of relevant facts or some unique knowledge that is relevant to the action." *Frasers Grp. v. Gorman*, No. 23 Misc. 348 (PAE), 2023 WL 6938284, at *3 (S.D.N.Y. Oct. 19, 2023), *aff'd sub nom. Frasers Grp. v. Stanley*, 95 F.4th 54 (2d Cir. 2024); *see also Consol. Rail Corp. v. Primary Indus. Corp.*, No. 92 Civ. 4927, 1993 WL 364471, at *1 (S.D.N.Y. Sept. 10, 1993) (same).

Here, defendants seek a protective order under Rule 26 to block Downey's deposition by Meier. They argue that Downey does not have any personal or unique knowledge relevant to Meier's claims, such that his testimony would not add any value, and to the extent he could testify on general propositions about Google, such testimony from a high executive would be "unreasonably cumulative or duplicative." Dkt. 43 at 1–2.

The Court agrees. Meier has not established that Downey has any personal or unique knowledge, or that other witnesses are incapable of providing whatever other testimony might be elicited from him. *See, e.g., Consol. Rail Corp.*, 1993 WL 364471, at *1 (granting protective order where party seeking to depose a high-level executive had not attempted to depose lower-level executives); *Digit. Equip. Corp. v. Sys. Indus., Inc.*, 108 F.R.D. 742, 744 (D. Mass. 1986)

3

(precluding deposition of company's president where lawyer stated he was going to "waste one of [the president's] afternoons" by taking the deposition); *cf. Felder v. Warner Bros. Discovery*, No. 23 Civ. 8487, 2025 WL 1718098, at *20 (S.D.N.Y. June 20, 2025) (permitting deposition of senior executive to proceed where, even if executive was not "the ultimate decision-maker," she "participated substantially in the discussions" about plaintiff's termination).

Meier's three arguments to the contrary are unavailing.

First, Meier states that Downey is at the "nucleus" of his "gender discrimination claims," and has personal knowledge of them. Dkt. 49 at 2–3. Meier declares that Downey had "direct visibility into how promotion candidates were evaluated, compared, and approved." *Id.* at 2. Meier appears to base that conclusion on two emails Meier received from Downey: one on November 1, 2022 and the other on January 15, 2020. Meier casts the November 1, 2022, email as memorializing a "statistical disparity" among Google's hiring decisions. *Id.* Based on the Amended Complaint and the parties' letter-briefs, however, Downey's email does no more than announce an earlier-selected set of promotions. Meier casts the January 15, 2020 email as one in which Downey assigned him a "key workstream," and argues that it follows that "Downey can testify about Defendant Martinez's communications to senior leadership about [Meier's] termination and how the decision-making process unfolded at the leadership level." *Id.* But that email was sent more than four years before Meier's termination from Google in April 2024. AC ¶ 89. Meier's claim that Downey had relevant personal knowledge depends on a series of unestablished assumptions—including that Downey was responsible for evaluating Meier's work product, that this work product was material to the company's promotion or termination decisions with respect to Meier years later, that Martinez communicated with Downey about

4

these decisions, and that Downey participated in such decisions. Downey, without refutation, disavows personal knowledge as to these topics. Dkt. 43 at 2.

Meier cannot rely on Downey's title to show personal knowledge of information relevant to his claims. *See, e.g., Colon v. Coughlin*, 58 F.3d 865, 873–74 (2d Cir. 1995) (supervisor's position does not alone support that supervisor had personal involvement in relevant events); *Weber v. FujiFilm Med. Sys. U.S.A., Inc.*, No. 10 Civ. 401, 2011 WL 677278, at *1 (D. Conn. Jan. 24, 2011) (granting high-ranking executive's motion for protective order where he was not "not directly involved in the day-to-day operations" and "it was not his decision to terminate [plaintiff]"); *Shiber v. Centerview Partners LLC*, No. 21 Civ. 3649, 2023 WL 3071554, at *3 (S.D.N.Y. Apr. 25, 2023) (denying motion to compel deposition of chief executive of international investment firm with 400 employees where he lacked "personal and unique knowledge" of plaintiff's termination).

Second, Meier declares that Downey has unique, "first-hand knowledge of the decisions made by senior executives" as to his employment, which he cannot otherwise obtain from lower-level employees. Dkt. 49 at 3. But that claim also rests on an implicit but unestablished assumption: that Downey exercised decision-making authority over Meier's promotion or termination.[2] Defendants represent that Meier has not served any "interrogatories, requests for admission, or other targeted discovery aimed at identifying the individuals who 'oversaw' or had 'first-hand knowledge' of the promotion process." Dkt. 43 at 2. Notably, too, Meier has noticed depositions of six other Google officials or employees, including a 30(b)(6) representative and

---

[2] Meier states that he has "obtained witness statements from multiple former employees corroborating that a discriminatory pattern was well known within the organization." Dkt. 49 at 3. Tellingly, however, he does not represent that any of these witnesses attested to Downey's role in bringing about this "pattern" or making decisions regarding Meier's employment. *Id.*

5

multiple supervisors of Meier's.[3] *Id.* at 1 n.1. These pending depositions make it all the more appropriate to preclude Downey's deposition unless and until Meier can show, through information obtained in discovery, that Downey possesses a "unique knowledge pertinent to the issues" in the case. *Consol. Rail Corp.*, 1993 WL 364471, at *1; *see also Six West Retail Acquisition, Inc. v. Sony Theatre Mgmt. Corp.*, 203 F.R.D. 98, 102 (S.D.N.Y. 2001) (ordering depositions of corporate executives where the executive was found to have "unique knowledge" of the proceeding); *Speadmark, Inc. v. Federated Dep't Stores, Inc.*, 176 F.R.D. 116, 117–18 (S.D.N.Y. 1997) (permitting deposition of high-level executive to proceed where executive had been shown to have been present for numerous discussions about key contract).

Finally, Meier attempts to distinguish his case from those in which protective orders under Rule 26 have been granted. He states that there is a "documentary connection" between Downey and Meier, meriting Downey's deposition. Dkt. 49 at 3. But that fact—that the two are on common documents or at some point communicated—does not avail Meier, absent evidence that their interactions implicated events at issue. This case is thus easily distinguished from *GMO Gamecenter USA, Inc. v. Whinstone US, Corp.*, a breach-of-contract case in which the CEO possessed unique, personal knowledge of (and indeed signed) a central agreement. *See* No. 22 Civ. 5974, 2025 WL 1488512, at *1–2 (S.D.N.Y. May 23, 2025). Indeed, the court there distinguished the usual "situation where a top executive was merely apprised of information and

---

[3] Meier alleges that he worked directly under the supervision of at least two of these deponents— none of whom were Downey. AC ¶ 30 (alleging plaintiff worked under the supervision of Martinez, Country Director Lars Lehne, Global Client Lead Amy Yury, Director of US Agency Business Development Monique Sanchez, and Head of Emerging Products and Markets Steven Yap). Yap's testimony is particularly salient, as he served as Meier's supervisor for the two years before his termination. *Id.* ¶ 11, 71–72. Yap's knowledge is likely duplicative of—and far more expansive than—the limited pertinent knowledge Meier might obtain from Downey. *See Wertheim Schroder & Co. v. Avon Prods. Inc.*, No. 91 Civ. 2287, 1995 WL 6259, at *2 (S.D.N.Y. Jan. 9, 1995).

simply had ultimate authority," on the ground that the CEO "was intimately involved in directing and deciding key corporate actions at issue in this case." *Id.* That Downey and Meier were on some of the same emails, without more, does not establish Downey's personal, unique knowledge as to Meier's claims here. *See, e.g., Diesel Props S.r.l. v. Greystone Bus. Credit II LLC*, No. 7 Civ. 9580, 2008 WL 5099957, at *2 (S.D.N.Y. Dec. 2, 2008); *Mark Anthony Int'l SRL v. Prime Hydration, LLC*, No. 24 Civ. 7620 (PAE), 2025 WL 2055998, at *1–3 (S.D.N.Y. July 23, 2025) (same); *Frasers Grp.*, 2023 WL 6938284, at *3.

## CONCLUSION

For the above reasons, the Court grants defendants' motion for protective order precluding Meier from taking the deposition of Downey. This order is without prejudice to Meier's right to seek leave of the Court to take such a deposition, based on a concrete showing that Downey has personal, unique knowledge of the events at issue. The Clerk of Court is respectfully directed to close the motion pending at docket 43.

SO ORDERED.

*Paul A. Engelmayer*
_____
PAUL A. ENGELMAYER
United States District Judge

Dated: February 20, 2026
       New York, New York